## THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| **JONATHAN D. SANDERS,** | **MEMORANDUM DECISION AND ORDER** |
| **Plaintiff,** | |
| **v.** | **Case No. 2:21-cv-00146-JCB** |
| **PROGRESSIVE PREFERRED INSURANCE COMPANY; and DOES 1-10, inclusive,** | |
| **Defendants.** | **Magistrate Judge Jared C. Bennett** |

Under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, all parties have consented to Judge

Jared C. Bennett conducting all proceedings in this case, including entry of final judgment.[1]

Plaintiff Jonathan D. Sanders ("Mr. Sanders") filed a motion for summary judgment regarding

the second cause of action in the complaint (i.e., breach of the implied covenant of good faith

and fair dealing),[2] and, shortly thereafter, Defendant Progressive Preferred Insurance Company

("Progressive") filed a motion for partial summary judgment of its own on the same cause of

action.[3] The court carefully reviewed all the parties' respective memoranda and their

accompanying exhibits. The court also considered the points that the parties' counsel presented at

---

[1] ECF No. 10.

[2] ECF No. 40.

[3] ECF No. 43.

oral argument on December 12, 2022.[4] Now being fully advised, the court denies Mr. Sanders's motion for partial summary judgment and grants Progressive's.

**UNDISPUTED MATERIAL FACTS**

On November 9, 2019, a distracted driver collided with the car that Mr. Sanders was driving.[5] To address his injuries, Mr. Sanders visited Dr. Conger at Capstone Rehab.[6] Between November 2019 and April 2020, Mr. Sanders visited Dr. Conger 38 times at a total cost of $8,496.[7] Mr. Sanders eventually settled his claim against the negligent driver's insurance company for $25,000, which constituted policy limits.[8] In addition to receiving $25,000 from the other driver's insurance company, Mr. Sanders received $3,000 in compensation from his own personal injury protection policy that he had with Progressive.[9]

After receiving $28,000 in insurance proceeds for his accident, Mr. Sanders believed that his compensation was insufficient for his injuries. So, on July 17, 2020, Mr. Sanders made an underinsured motorist claim for policy limits (i.e., $25,000) with Progressive, which was Mr. Sanders's insurance carrier.[10] This claim contained, among other things, the accident reports

---

[4] ECF No. 60.

[5] ECF No. 40 at 2; ECF No. 43 at 4.

[6] ECF No. 43-2 at 3, 34-35 of 303.

[7] *Id*. at 5, 7 of 303.

[8] *Id*. at 5 of 303.

[9] *Id*. at 3-4, 33-35 of 303.

[10] ECF No. 43-4 at 2 of 2.

from the November 9, 2019 accident,[11] a total amount of medical expenses (i.e., $8,496),[12] and Mr. Sanders's treatment records from Dr. Conger.[13]

Progressive's claim representative, Gregory Wallin ("Mr. Wallin"), reviewed Dr. Conger's treatment records, which began on November 14, 2019, and ended on April 20, 2020.[14] Progressive observed that although Mr. Sanders reported a pain level of 10/10 to Dr. Conger on November 14, 2019, Mr. Sanders reported on April 20, 2020, that his pain level was 1/10 in all areas except his lower back, which was 2/10.[15] Dr. Conger also concluded on April 20, 2020, that Mr. Sanders had a permanent partial impairment rating of 13%.[16] In that same treatment note, Dr. Conger stated:[17]

> There are still some residual Myospasm noted mainly at the cervical, thoracic, and lumbar regions. Our experience with patients having similar problems leads us to believe that Mr. Sanders is likely to have exacerbations, relapses, and re-occurrences due to the stresses of work and leisure time activities. Therefore, we have instructed Jonathan to return if his symptoms worsen. We anticipate the need for additional chiropractic care a few times a year with a series of treatments/visits required with each episode. Three to four episodes per year are not uncommon in patients with similar instability. The probability of future improvement is not likely in fact, in time the patient may very well decline. I have also instructed him to follow a supportive care program of 1-2 adjustments per month to minimize exacerbation.

Between April 20, 2020, and the date that Progressive denied Mr. Sanders's claim, Mr. Sanders did not visit Dr. Conger again.[18]

---

[11] ECF No. 43-2 at 40-46, 285-96 of 303.

[12] *Id*. at 38-39 of 303.

[13] *Id*. at 50-284 of 303.

[14] *Id*. at 6 of 303.

[15] *Id*.

[16] *Id*. at 6, 105 of 303.

[17] *Id*.

[18] *Id*. at 6 of 303.

After reviewing Mr. Sanders's claim, Progressive totaled the medical bills at $8,496.[19]

Progressive then considered "general damages" between $12,000 and $16,000 based on Mr.

Wallin's "estimate of the range of possible jury awards" derived from his "experience in working

on Utah cases."[20] After totaling medical expenses and "general damages," Progressive deducted

the amounts of insurance previously paid to Mr. Sanders and concluded that Mr. Sanders had

already been overcompensated for his injuries stemming from the November 2019 accident.[21]

Consequently, on July 29, 2020, Progressive counteroffered $1,000 for Mr. Sanders's

policy-limits demand.[22]

Mr. Sanders did not respond to Progressive's counteroffer to Mr. Sanders's policy-limits

demand for quite some time. Progressive followed up with Mr. Sanders's counsel on August 13,

2020; August 20, 2020; September 3, 2020; September 17, 2020; October 1, 2020; October 15,

2020; and November 5, 2020 because counsel had not responded to Progressive's counteroffer.[23]

On November 5, 2020, Mr. Sanders's counsel responded by stating that a lawsuit would soon be

filed without further negotiation.[24] Because a lawsuit had not been filed by the end of December

2020 or January 2021, Progressive continued to periodically follow up with Mr. Sanders's

---

[19] *Id*. at 7 of 303.

[20] *Id*. at 8 of 303.

[21] *Id*. at 7-8 of 303.

[22] *Id*. at 8 of 303. Progressive's $1,000 counteroffer serves as a rejection of Mr. Sanders's claim. *Cea v. Hoffman*, 2012 UT App 101, ¶ 33, 276 P.3d 1178 ("A counteroffer operates as a rejection of an offer because it is interpreted as being, in effect, a statement by the offeree not only that he will enter into the transaction on the terms stated in his counteroffer, but also by implication that he will not assent to the terms of the original offer." (quotations and citation omitted)).

[23] ECF No. 43-2 at 8-9 of 303.

[24] *Id*. at 9.

counsel.[25] Mr. Sanders eventually filed a lawsuit on February 15, 2021, in Third District Court for the State of Utah that asserted 3 causes of action: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; and (3) intentional infliction of emotional distress.[26] That action was removed to this court on March 9, 2021.[27]

With the commencement of litigation in this court, Mr. Sanders provided his initial disclosures under Fed. R. Civ. P. 26(a)(1)(A).[28] In the section of his initial disclosures dedicated to providing "'[a] computation of each category of damages claimed by the disclosing party,'"[29] Mr. Sanders wrote: "Capstone Rehab 11/14/2019 - 4/20/2020 $8,496.00."[30] Accompanying this lone damage computation, Mr. Sanders provided the following explanation:[31]

> The total medical costs incurred for treatment was **$8,496.00**. All of the medical bills and treatment records are provided herewith, which detail Jonathan's injuries, diagnoses, treatment, etc. Jonathan suffered, among other things, neck pain, shoulder pain, wrist pain, mid and low back pain, leg pain, knee pain, and sleeplessness. Although treatment provided relief and Jonathan reached maximum medical improvement, Jonathan continues to suffer headaches and pain to his cervical, thoracic and lumbar regions. Accordingly, Dr. Conger indicates that Jonathan has a permanent, partial, whole person impairment rating of 13% based on AMA guidelines. Dr. Conger notes that he expects Jonathan to require future care.
>
> Plaintiff reserves the right to supplement this section during litigation. Plaintiff's injuries and future medical care will be the subject of expert testimony and will be supplemented during expert discovery.

---

[25] *Id*. at 9-10 of 303.

[26] ECF Nos. 2-1; 5-1.

[27] ECF No. 2.

[28] ECF No. 43-5.

[29] *Id*. at 4 of 5 (quoting Fed. R. Civ. P. 26(a)(1)(A)(iii)).

[30] *Id*.

[31] *Id*. at 5 of 5.

Later, Progressive moved for partial summary judgment on Mr. Sanders's second and third causes of action (i.e., breach of the covenant of good faith and fair dealing and intentional infliction of emotional distress, respectively).[32] Mr. Sanders responded by agreeing that the third cause of action should be dismissed but sought additional time to conduct discovery under Fed. R. Civ. P. 56(d) regarding the second cause of action.[33] The court granted Progressive's motion for summary judgment as to Mr. Sanders's third cause of action, denied the motion without prejudice as to Mr. Sanders's second cause of action, and granted Mr. Sanders an extension of time to conduct additional discovery.[34]

After the extended discovery period, Mr. Sanders filed a motion for partial summary judgment as to the second cause of action claiming, among other things, that his insurance claim was not fairly debatable.[35] Progressive then filed a cross-motion for partial summary judgment on that claim arguing that: (1) Mr. Sanders's insurance claim to Progressive was fairly debatable; and (2) Mr. Sanders failed to meet the element of damages for his second cause of action.[36] Although Progressive's cross-motion for summary judgment raised the issue of Mr. Sanders's failure to disclose his future damages, Progressive never moved to exclude them under Fed. R. Civ. P. 37(c). However, the court raised the issue and ordered the parties to discuss at oral

---

[32] ECF No. 16.

[33] ECF No. 22 at 2 (stating that "[Mr. Sanders] does not contest [Progressive's] summary judgment on his [intentional infliction of emotional distress] claim—and is willing to stipulate to its dismissal" and seeking additional discovery).

[34] ECF No. 31.

[35] ECF No. 40.

[36] ECF No. 43.

argument whether undisclosed damages should be excluded under Rule 37(c).[37] The parties addressed the court's Rule 37(c) concerns at oral argument in addition to providing their contentions in support of their respective cross-motions for summary judgment.

After providing the relevant legal standards below, the court grants Progressive's motion based on two grounds. First, Mr. Sanders's underinsured motorist claim was "fairly debatable." But even if it were not, Mr. Sanders cannot state a claim for damages unless the Utah Supreme Court rules that attorney's fees constitute a category of "damages" in first-party contract claims such as Mr. Sanders's. While addressing each argument on summary judgment, the court also addresses any issues raised at oral argument regarding Rule 37(c).

## LEGAL STANDARDS

Under Fed. R. Civ. P. 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "A genuine issue of fact exists only where 'the evidence is such that a reasonable jury could return a verdict for the non-moving party.'"[38] "Thus, the relevant inquiry is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"[39]

---

[37] ECF No. 58.

[38] *Carey v. U.S. Postal Serv.*, 812 F.2d 621, 623 (10th Cir. 1987) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[39] *Id.* (quoting *Anderson*, 477 U.S. at 251-52).

In evaluating a motion for summary judgment, the court "view[s] the facts in the light most favorable to the nonmovant and draw[s] all reasonable inferences in the nonmovant's favor."[40] "'The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.'"[41] If the movant does not bear the burden of proof at trial as to the claims for which it seeks summary judgment, then the movant "may make its prima facie demonstration by pointing out to the court a lack of evidence on an essential element of the nonmovant's claim."[42]

"If the movant meets this initial burden, the burden then shifts to the nonmovant to set forth specific facts from which a rational trier of fact could find for the nonmovant."[43] To satisfy its burden, "the nonmovant must identify facts 'by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein.'"[44] "These facts must establish, at a minimum, an inference of the presence of each element essential to the case."[45] Entry of summary judgment is required,

> after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of

---

[40] *Jones v. Norton*, 809 F.3d 564, 573 (10th Cir. 2015).

[41] *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1137 (10th Cir. 2016) (quoting *Libertarian Party of N.M. v. Herrera*, 506 F.3d 1303, 1309 (10th Cir. 2007)).

[42] *Libertarian Party of N.M.*, 506 F.3d at 1309 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)); *see also Savant Homes, Inc.*, 809 F.3d at 1137.

[43] *Libertarian Party of N.M.*, 506 F.3d at 1309 (citing *Celotex Corp.*, 477 U.S. at 324) (quotations and other citations omitted); *see also Savant Homes, Inc.*, 809 F.3d at 1137.

[44] *Savant Homes, Inc.*, 809 F.3d at 1137 (quoting *Libertarian Party of N.M.*, 506 F.3d at 1309).

[45] *Id.* at 1137-38 (quotations and citations omitted).

proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof.[46]

### ANALYSIS

### I.   Mr. Sanders's Insurance Claim Was Fairly Debatable.

Progressive is entitled to summary judgment on Mr. Sanders's second cause of action because Mr. Sanders's claim was fairly debatable. Because a duty of good faith and fair dealing "inhere[s] in *every* contractual relationship,"[47] parties to an insurance contract must conduct themselves accordingly. Where, as here, the insurance policy at issue is a first-party claim, this duty of good faith requires the insurer to: (1) "diligently investigate the facts" to determine "whether a claim is valid"; (2) "fairly evaluate the claim"; and (3) "act promptly and reasonably in rejecting or settling the claim."[48]

Although these are the standards of good faith for first-party insurers, Utah courts have also stated that if a claim is "fairly debatable," then "the insurer is entitled to debate it and cannot be held to have breached the implied covenant [of good faith]."[49] "'A "debatable reason," for purposes of determining whether a first-party insurer may be subjected to bad-faith liability, means an arguable reason, a reason that is open to dispute or question.'"[50] "A claim is therefore

---

[46] *Celotex Corp.*, 477 U.S. at 322-23 (quotations omitted).

[47] *Beck v. Farmer Ins. Exch.*, 701 P.2d 795, 801 (Utah 1985) (emphasis added).

[48] *Id.*

[49] *Billings v. Union Bankers Ins. Co.*, 918 P.2d 461, 465 (Utah 1996).

[50] *Prince v. Bear River Mut. Ins. Co.*, 2002 UT 68, ¶ 34, 56 P.3d 524 (quoting 14 Lee R. Russ & Thomas F. Segalla, COUCH ON INSURANCE 3d § 204:28 (1999)).

fairly debatable as a matter of law only when there is a legitimate factual issue as to the validity of the insured's claim, such that reasonable minds could not differ as to whether the insurer's conduct measured up to the required standard of care."[51]

To avoid the temptation to play Monday morning quarterback with the benefit of hindsight and a more developed record, courts determine the issue of "fairly debatable" from the date on which the insurance company denied the insured's claim.[52] This means that the only relevant information the court should consider is what the insurance company had before it at the time of claim denial.[53] The claim at issue here was for policy limits of $25,000.[54] Thus, this court must determine whether Progressive's decision not to pay $25,000 to Mr. Sanders on July 29, 2020, was "fairly debatable" with the information that Progressive had before it.

Mr. Sanders's claim is fairly debatable because there are two legitimate factual issues as to whether he would be entitled to $25,000. First, Mr. Sanders's need for future medical expenses was ambiguous. Second, Mr. Sanders's non-economic damages are far too uncertain.

---

[51] *M.A. v. Regence BlueCross BlueShield of Utah*, 2020 UT App 177, ¶ 17, 479 P.3d 1152 (quotations and citations omitted).

[52] *Jones v. Farmers Ins. Exch.*, 2012 UT 52, ¶ 7, 286 P.3d 301 ("Therefore, an insurer cannot be held to have breached the covenant of good faith on the ground that it wrongfully denied coverage if the insured's claim, although later found to proper, was fairly debatable *at the time it was denied*." (emphasis added) (quotations and citations omitted)).

[53] *Lund v. Truck Ins. Exch.*, 2021 UT App 64, ¶ 29, 494 P.3d 1045 ("Here, the central substantive question is whether, at the time TIE denied the claim, it had facts in front of it that indicated that the validity of the Lunds' claim was fairly debatable."); *BlueCross Blue Shield of Utah*, 2020 UT App 177 at ¶ 23 (evaluating whether first-party insurance claim was fairly debatable based on records that insured submitted to insurance company).

[54] ECF No. 43-4 at 2 of 2.

Consequently, a legitimate factual issue existed as to whether Mr. Sanders had been undercompensated at least $25,000 for his injuries. Each issue is discussed in order below.

A.   Progressive Reasonably Determined That Future Medical Care Was Uncertain.

Progressive reasonably determined that legitimate factual issues existed as to whether Mr. Sanders would incur future medical costs that by themselves or in conjunction with other damages would require Progressive to pay him $25,000. Before filing his underinsured motorist claim for policy limits, Mr. Sanders received $28,000 from both the at-fault driver's insurance company and Progressive's personal injury protection policy. To determine whether this amount of compensation still left Mr. Sanders undercompensated for his injuries, Progressive considered the fact that Mr. Sanders's total medical claims were $8,496. These medical claims were limited to chiropractic care for soft-tissue injuries.[55] Mr. Sanders did not have emergency room bills, surgeries, or mental health care expenses because of the accident. Instead, Mr. Sanders visited Dr. Conger 38 times between November 14, 2019, and April 20, 2020, to the tune of $8,496, which was paid for by previous insurance payouts. At the April 20, 2020 appointment, Dr. Conger noted that Mr. Sanders's pain had been reduced to 1/10 in all areas except for his lower back, which was 2/10.[56] Mr. Sanders did not visit Dr. Conger again between April 20, 2020, to July 29, 2020.

---

[55] ECF No. 43-2 at 5 of 303.

[56] *Id*. at 90 of 303 (showing pain progress from first visit to last on April 20, 2020).

That Mr. Sanders did not visit Dr. Conger again between April 20, 2020, and July 29, 2020, is significant for purposes of determining whether Mr. Sanders's claim was fairly debatable because Dr. Conger's note from Mr. Sanders's last appointment states that Mr. Sanders should return "*if* his symptoms worsen."[57] Although Dr. Conger's experience suggested that Mr. Sanders "is likely to have exacerbations, relapses, and re-occurrences," Dr. Conger appeared to inject some uncertainty into that observation by stating that "in time the patient *may* very well decline."[58] Dr. Conger's use of equivocal language reasonably led Progressive to believe that future medical treatment was conditional on future events.[59]

Adding to the ambiguity of Dr. Conger's opinion was the fact that Mr. Sanders did not see Dr. Conger again for treatment between April 20, 2020, and July 29, 2020. From Progressive's vantage point, had Dr. Conger intended Mr. Sanders to continue to receive treatment 1-2 times per month—which is how Mr. Sanders reads Dr. Conger's opinion—then Progressive would expect Mr. Sanders to have done just that in May, June, and July 2020. But Mr. Sanders did not visit Dr. Conger again between April 20, 2020, and July 29, 2020. Not visiting Dr. Conger for this period of time merely strengthened Progressive's belief that Dr.

---

[57] *Id*. at 105 of 303 (emphasis added).

[58] *Id*. (emphasis added).

[59] To be sure, Dr. Conger's also said that he instructed Mr. Sanders to undergo "1-2 adjustments per month to minimize exacerbation." *Id*. However, when read in context, this recommended procedure was not to treat the effects of the accident but to prevent a *possible* relapse of symptoms from the accident. This addition of preventative treatment does not fix the ambiguity in the previous sentences of Dr. Conger's prognosis, which were equivocal about the need for future treatment to deal with the impacts of the November 2019 accident on Mr. Sanders.

Conger's April 20, 2020 prognosis for Mr. Sanders was uncertain regarding future treatment, which created a legitimate factual issue that Progressive was entitled to debate.[60]

B. Progressive Reasonably Determined That a Legitimate Factual Issue Existed as to Whether Mr. Sanders's Non-Economic Damages Warranted an Additional $25,000 in Compensation.

A legitimate factual issue persists as to whether the $19,504 that Mr. Sanders had left over after paying medical expenses left him uncompensated for his non-economic injuries such that he needed an *additional* $25,000 for his pain and suffering. When dealing with an insurance company's assessment of non-economic damages, courts must acknowledge the problem of trying to place a precise number on such a calculation. Indeed, courts do not even require a *plaintiff* to compute and disclose non-economic damages in the plaintiff's initial disclosures under Fed. R. Civ. P. 26(a) because non-economic damages are too imprecise to calculate.[61] Utah courts agree.[62] Even at trial, because "[d]amages for pain and suffering are not susceptible to

---

[60] In his declaration attached to his opposition to Progressive's motion, Mr. Sanders does not explain why he did not visit Dr. Conger between April 20 and July 29, 2020. Instead, he explains why he did not visit Dr. Conger "since Progressive made its offer to settle" his claim for $1,000. ECF No. 50-1 at 4 of 16. This explanation post-dates Progressive's decision and, therefore, does nothing to create a material issue of fact as to what Progressive understood Dr. Conger's opinion to be regarding future damages. Moreover, for what it is worth, Mr. Sanders never gave Progressive any reason to question its interpretation of Dr. Conger's prognosis regarding future damages because during the time that Progressive was trying to negotiate with Mr. Sanders, he never provided any information to Progressive that he needed medical care. In fact, Mr. Sanders never visited Dr. Conger from April 2020 to when he filed suit. That fact only strengthens Progressive's reasonable belief that future medical damages were uncertain.

[61] *See, e.g.*, *Roberts v. Tim Dahle Imps., Inc.*, No. 2:18-cv-00288, 2022 WL 1787709, at *1-2 (D. Utah June 1, 2022) (denying exclusion of noneconomic damages under Fed. R. Civ. P. 37(c) because they are not amenable to precise computation and citing numerous authorities supporting that proposition).

[62] *Jorgensen v. Gonzales*, 383 P.2d 934, 936 (Utah 1963) ("[T]here is no set formula as to the amount of [noneconomic] damages that may be awarded.").

proof by a specific dollar amount, . . . the jury has wide discretion in rendering a particular amount."[63] Given that a plaintiff who suffers the injuries leading to a lawsuit cannot precisely quantify non-economic damages, and given that a jury has "wide discretion" in deciding on a particular amount of non-economic damages at trial, an insurance company evaluating a claim that includes non-economic damages cannot be held to a higher standard than either the plaintiff claiming non-economic damages or a jury.

Because of the imprecise nature of non-economic damage claims, Progressive could reasonably determine that a legitimate factual dispute existed as to whether Mr. Sanders had experienced pain and suffering that could be valued at $25,000 beyond the he had already received from other insurance payments. On the one hand, Progressive estimated that Mr. Sanders's non-economic damages were between $12,000 and $16,000.[64] Progressive reached this estimate based on the type of injuries that Mr. Sanders had incurred from the accident, the number of times he had been to see Dr. Conger, the absence of other types of more serious medical interventions (e.g., surgery), the improvement that Mr. Sanders had experienced through medical treatment, and the fact that Mr. Sanders sought no additional medical treatment from April 20, 2020, to July 29, 2020, for his injuries. Based on Progressive's estimate for non-economic damages plus the $8,496 of medical expenses that Mr. Sanders had incurred, the $28,000 that Mr. Sanders had already received from other insurance policies covered all his damages—not just pain and suffering.

---

[63] *Woolard v. JLG Indus., Inc.*, 210 F.3d 1158, 1174 (10th Cir. 2000).

[64] ECF No. 43-2 at 7-8 of 303.

On the other hand, Mr. Sanders contends that his pain and suffering was worth at least what he received from other insurance policies plus an additional $25,000 from Progressive's underinsured motorist policy. In support of that argument, Mr. Sanders contends that Progressive "does not know how often [he] experiences pain, the duration of the pain, or the intensity of the pain."[65] Because people experience pain differently, Mr. Sanders argues, Progressive should have done more to learn how painful his injuries were and should have awarded an additional $25,000 beyond what Mr. Sanders had already received.[66] In essence, Mr. Sanders argues that his injuries were really painful and had Progressive done more to learn about his pain, then Progressive would have agreed to pay him policy limits.

Regardless of which hand the court considers, however, the court is confronted with the same thing: an estimate of a type of damage that is difficult to calculate with any precision. Mr. Sanders's attempt to affix a dollar amount to his pain and suffering is no more reliable or rational than Progressive's attempt to do the same thing based on a claims adjuster's experience when considering Mr. Sanders's injuries, medical care, and prognosis. These "rational differences in claim valuations do not lead to an inference of bad faith,"[67] they lead to a legitimate factual issue[68] that Progressive is entitled to debate.[69] Accordingly, Mr. Sanders's claim was fairly

---

[65] ECF No. 40 at 19.

[66] *Id.*

[67] *Enrique v. State Farm Mut. Auto. Ins. Co.,* 142 A.3d 506, 514 (Del. 2016).

[68] (i.e., whether the intensity and duration of Mr. Sanders's pain and suffering were consistent with the nature of his injuries).

[69] *Prince*, 2002 UT 68 at ¶ 34.

debatable, and Progressive is entitled to judgment as a matter of law on Mr. Sanders's second cause of action.[70]

## II.    Unless the Utah Supreme Court Finds That Attorney's Fees Alone Constitute Damages for Breach of Contract on the Certified Case Now Before It, Mr. Sanders Has Failed to Meet the Element of Damages.

Assuming *arguendo* that Mr. Sanders's claim for policy limits was not fairly debatable, Mr. Sanders cannot establish the element of damages for his second cause of action unless the Utah Supreme Court determines that attorney's fees satisfy this element in the certified case now pending before it.[71] "A breach of contract claim requires four essential elements of proof, one of which is damages."[72] The element of damages consists of two parts: (1) fact of damages, and (2) the amount of damages.[73] "To establish the fact of damages, [t]he evidence . . . must give rise to a reasonable probability that the plaintiff suffered damage."[74] And although "the standard for

---

[70] Mr. Sanders also argues that Progressive cannot avail itself of the fairly debatable defense because Progressive's claim adjuster was not legally, medically, or scientifically qualified to make determinations about the extent of Mr. Sanders's damages. ECF No. 40 at 19-21. However, based on Mr. Sanders's argument, the only person that could be a qualified claims adjuster is a person with a juris doctorate, a medical doctorate, and a doctorate in physics. Not surprisingly, Mr. Sanders provides no authority for the proposition that a claims adjuster must be grossly overqualified to adequately investigate a claim. Consequently, the court finds this argument unpersuasive. Also, Mr. Sanders contends that Progressive's $1,000 offer was substantially below the reserves that it had set aside for Mr. Sanders's claim and, therefore, shows bad faith. *Id.* at 21-22. However, this argument too is unpersuasive because regardless of the amount Progressive had set aside for Mr. Sanders's claim, both future damages and non-economic damages were fairly debatable as shown above.

[71] *Angus v. State Farm Fire & Cas. Co.*, No. 1:21-cv-00034-JNP-JCB, 2022 WL 4610047 (D. Utah Sept. 30, 2022) (indicating inclination to certify question to Utah Supreme Court of whether attorney's fees are "damages" for first-party bad faith claims); *see also id.* at ECF No. 54 (certifying same question to Utah Supreme Court).

[72] *Eleopulos v. McFarland & Hullinger, LLC*, 2006 UT App 352, ¶ 10, 145 P.3d 1157.

[73] *Stevens-Henager Coll. v. Eagle Gate Coll.*, 2011 UT App 37, ¶ 16, 248 P.3d 1025.

[74] *Id.* (quotations and citations omitted) (alterations in original).

determining the amount of damages is not so exacting as the standard for proving the fact of damages, there still must be evidence that rises above speculation and provides a reasonable, even though not necessarily precise, estimate of damages.'"[75]

Mr. Sanders has provided several categories of damages over the course of this litigation. In his initial disclosures, he sought: (1) $8,496 in past medical care; and (2) undisclosed and uncalculated future damages.[76] These initial disclosures were never supplemented.

In his summary judgment memoranda, Mr. Sanders contends that his damages consist of: (1) attorney's fees; (2) punitive damages; (3) prejudgment interest; (4) mental anguish; and (5) treatment costs incurred *after* Progressive offered Mr. Sanders $1,000.[77] During oral argument, Mr. Sanders also contended that he was entitled to $209,261.52 in future medical expenses.[78] The court will not opine on whether attorney's fees constitute damages because that issue is currently pending before the Utah Supreme Court on a certified question. However, as shown below, the court shows that Mr. Sanders cannot establish the fact of damages for: (A) punitive damages; (B) prejudgment interest; (C) mental anguish; and (D) past, present, and future medical expenses.

---

[75] *Id.* (quotations and citations omitted).

[76] ECF No. 43-5 at 5 of 5.

[77] ECF No. 50 at 34-39.

[78] Mr. Sanders arrives at this figure by assuming that he will need 2 chiropractic visits per month at $223.57 for the next 39 years, which is his statistical life expectancy. Thus, the computation would be ($223.57/visit x 2/month) (12 months/year x 39 years) = $209,261.52.

A.  <u>Punitive Damages Are Unavailable as a Matter of Law</u>.

Mr. Sanders cannot rely on punitive damages to show the fact of damages because punitive damages are unavailable as a matter of law. In *Beck v. Farmers Insurance Exchange*,[79] the plaintiff filed a bad faith claim, among others, against the insurer for failing to provide policy limits on an uninsured motorist claim.[80] In pursuit of the bad faith claim, the plaintiff sought $500,000 in punitive damages, which are available in a third-party insurance context because the insurer has a fiduciary duty with the insured.[81] The Utah Supreme Court held that, unlike a third-party insurance claim, a first-party claim does not establish a fiduciary relationship between an insured and the insurer.[82] Therefore, instead of being a tort action, a first-party insurance bad faith claim is governed by contract law instead of tort law.[83]

As to available damages, the *Beck* court specified: "Damages recoverable for a breach of contract include both general damages . . . and consequential damages . . . ."[84] Conspicuously absent from *Beck*'s enumeration of available damages is "punitive damages." This is because "punitive damages are recoverable only for torts, not for breach of contract."[85] And according to a very recent decision from the Utah Supreme Court, *Beck*'s holding is still good law.[86]

---

[79] 701 P.2d 795 (Utah 1985).

[80] *Id.* at 797.

[81] *Id.* at 799.

[82] *Id.* at 799-800.

[83] *Id.* at 800 ("We therefore hold that in a first-party relationship between an insurer and its insured, the duties and obligations of the parties are contractual rather than fiduciary.").

[84] *Id.* at 801.

[85] *Smith v. Grand Canyon Expeditions Co.*, 2003 UT 57, ¶ 29, 84 P.3d 1154.

[86] *UMIA Ins., Inc. v. Saltz*, 2022 UT 21, ¶ 44 n.8, 515 P.3d 406 (quoting *Beck* for the proposition that first-party insurance claims are not fiduciary in nature).

Therefore, because first-party insurance claims are governed by contract law and given that contract claims are not eligible for punitive damages, Mr. Sanders cannot seek them here as a matter of law.[87]

      B.  <u>Prejudgment Interest Does Not Establish Fact of Damages</u>.

Mr. Sanders cannot rely on prejudgment interest to satisfy the element of the fact of damages because prejudgment interest does not constitute damages in the first place. "[P]rejudgment interest is appropriate when the loss has been fixed as of a definite time and the amount of the loss can be calculated with mathematical accuracy in accordance with well-established rules of damages."[88] In other words, pre-judgment interest comes into being only if a fact finder provides an award of some other legally supportable category of damages. This is mathematically obvious. If a fact finder were to find a Plaintiff entitled to $0 in damages, then pre-judgment interest would be the going pre-judgment interest rate multiplied by 0. And although the modern way of teaching math differs from that of my generation, one thing has not changed: anything multiplied by 0 is 0. Consequently, it makes no legal sense to award pre-judgment interest independently of any other damage award because, without the latter, the former does not exist. Thus, pre-judgment interest, by itself, cannot satisfy the fact of damages.

---

[87] *8665 N. Cove, LLC v. Am. Fam. Mut. Ins. Co.*, No. 2:12CV237DAK, 2014 WL 2777467, *4 (D. Utah June 19, 2014) ("Therefore, Utah law does not allow for punitive damages in a first-party bad faith action. Any duty American Family owed to North Cove was contractual rather than fiduciary.").

[88] *Glob. Fitness Holdings, LLC v. Fed. Recovery Acceptance, Inc.*, No. 2:13-CV-00204-DN, 2017 WL 3382066, at *11 (D. Utah Aug. 4, 2017) (quotations, citations, and footnote omitted).

C. <u>Damages for Mental Anguish Are Unavailable Because Mr. Sanders Cannot Establish That They Arose From Progressive's Alleged Breach</u>.

Mr. Sanders cannot establish the fact of damages for mental suffering because "there can be no award for mental anguish that accompanies the stressful nature of a lawsuit."[89] Mr. Sanders claims that his mental anguish stems from being "forced to be involved in responding to written discovery, providing a deposition, updates on [presumably legal] strategy," and his declaration "notes that he has experienced mental anguish, anxiety[,] and stress over this case."[90] Simply stated, Mr. Sanders "experiences anxiety about the outcome of this case."[91]

This does not state a legitimate damage claim for mental anguish. In *Timms v. Rosenblum*,[92] the plaintiff sued her former attorneys for malpractice and alleged that the litigation against them caused her mental anguish for which she sought compensation.[93] In rejecting her claim, the *Timms* court stated:

> The wisdom of precluding mental anguish damages in this case is confirmed by considering the consequences of a contrary ruling. . . . The simple truth is that mental anguish attends all litigation. Any lawyer who has practiced for any substantial time in virtually any area of law will immediately confirm that parties in all of these areas make substantial emotional investments in their causes and suffer mental anguish in the event of an adverse result. This is manifestly so in areas of civil litigation involving claims of employment discrimination, wrongful discharge, civil rights violations, handicapped rights violations, labor disputes, worker's

---

[89] *Swanston v. City of Plano*, No. 19-cv-412, 2022 WL 2704532, at *5 (E.D. Tex. July 12, 2022).

[90] ECF No. 50 at 38.

[91] *Id.*

[92] 713 F. Supp. 948 (E.D. Va. 1989).

[93] *Id.* at 949, 954.

compensation and indeed even patent, copyright and corporate disputes.[94]

Moreover, it seems odd for Mr. Sanders to initiate this action as the plaintiff and then contend that he was "forced" to engage in discovery in the lawsuit he filed thereby multiplying damages against the defendant who has an absolute right to defend itself in court.[95] Indeed, upon filing a lawsuit, a plaintiff assumes the risk of feeling stress, anxiety, and mental preoccupation with litigation, its strategy, and its uncertain outcome.[96] And if the opposing party violates the rules of litigation, which adds to the plaintiff's stress, then the court imposes sanctions. Even in those cases, however, the measure of sanctions is never based on the amount of the plaintiff's stress. Therefore, the stress of a lawsuit that Mr. Sanders initiated cannot establish the fact of damages.

---

[94] *Id.* at 955.

[95] *Stoleson v. United States*, 708 F.2d 1217, 1223 (7th Cir. 1983) ("It would be strange if stress induced by litigation could be attributed in law to the tortfeasor. An alleged tortfeasor should have the right to defend himself in court without thereby multiplying his damages . . . .").

[96] *Clark v. United States*, 660 F. Supp. 1164, 1200 (W.D. Wash. 1987) ("You can argue that the stress of litigation is caused by the harm that gave rise to the litigation. On the other hand, the litigation is something that people do as a matter of choice, and it in and of itself and separately from the underlying harm can be a substantial stressor in the lives of individuals."); *Picogna v. Bd. of Educ. Twp. of Cherry Hill*, 671 A.2d 1035, 1038-39 (N.J. 1996) ("Both the state and federal cases reflect the view that because anxiety is an unavoidable consequence of the litigation process, it does not form a separate basis for recovery against one's opponent. Although the damages caused by the wrongful conduct induce the litigation, and hence the attendant stress, a plaintiff chooses to pursue litigation cognizant of both the economic and emotional costs that it will entail. Some of the stress is caused by a general distaste for litigation, and some by a plaintiff's vigorous participation in the litigation process. Yet the substantial emotional investment made by a plaintiff in a case is merely the normal result of being a litigant. We hold, therefore, that plaintiff may not recover for litigation-induced distress as a separate component of damages. Plaintiff may, however, recover for severe emotional distress proximately caused by the pre-and post-termination events exclusive of the litigation.").

D.  Mr. Sanders's Past, Present, and Future Treatment Costs in This Action Do Not Prove Fact of Damages From Progressive's Alleged Breach of Contract.

Mr. Sanders's claim of $8,496 for past medical treatment, $200 for present treatment, and $209,261.52 in future damages do not show the fact of damages because they were caused by the accident—not Progressive's alleged bad faith. Although a party can obtain consequential and future damages for an insurance company's breach of the covenant of good faith and fair dealing under Utah law, those damages are limited to those caused by the insurance company's breach.[97] As shown in order below, all three medical treatment categories were caused by the November 2019 accident instead of by Progressive's alleged bad faith.

First, Mr. Sanders's claim of $8,496 in medical bills from Dr. Conger were entirely caused by the accident because that entire amount was incurred *before* Mr. Sanders ever submitted his claim to Progressive. Indeed, Mr. Sanders's 38 visits to Dr. Conger that totaled $8,496 occurred before Progressive rendered its allegedly bad faith denial of Mr. Sanders's claim.[98] Mr. Sanders submitted his claim to Progressive approximately three months *after* incurring those medical expenses from Dr. Conger. Thus, there is no factual basis to argue that Progressive July 29, 2020 counteroffer caused Mr. Sanders to incur $8,496 in medical expenses.

---

[97] *Machan v. UNUM Life Ins. Co. of Am.*, 2005 UT 37, ¶ 9, 116 P.3d 342 (holding that consequential damages for insurance company's breach of covenant of good faith and fair dealing are limited to "any damages [that] were caused by the breach").

[98] ECF No. 43-2 at 100-105 of 303 (showing last medical visit to Dr. Conger occurred on April 20, 2020).

Second, Mr. Sanders's claim for $200 in current medical expenses is also attributable to the accident and not Progressive's behavior. In his declaration submitted with his memorandum opposing Progressive's motion for partial summary judgment, Mr. Sanders states:[99]

> 9.      I have only been back to the chiropractor a few times since Progressive made its offer to settle my UIM claim for $1,000. I was charged around $200 for the two visits.
>
> 10.      This is not because I don't need the treatment. Rather, it is difficult financially for me to take the time off work. It is also difficult financially for me to pay for the treatment. So far I have just "pushed through" the pain. But I know I need to return for treatment and that it will help me.
>
> 11.      Because they still cause me pain, I have not been able to resume all of my activities and hobbies. Prior to the crash I was involved in competitive weightlifting and powerlifting and was on more than one team and helped out and also participated in competitions. I used to spend more than 30 hours a week on these activities. Due to my injuries from the car crash I cannot do that anymore.

"Due to [his] injuries from the car crash,"[100] and not because of Progressive's bad faith, Mr. Sanders has obtained $200 in further medical care from Dr. Conger. At no time does Mr. Sanders say that he has sought medical care for Progressive's alleged bad faith. Indeed, the only damages he attributes to Progressive are the stress of litigation,[101] which, as shown above, are not compensable. Therefore, the $200 in present medical expenses are not attributable to Progressive's alleged bad faith and cannot prove the fact of damages.

---

[99] ECF No. 50-1 at 4 of 16.

[100] *Id.*

[101] *Id.* at 5 of 16.

Finally, to the extent that Mr. Sanders is seeking over $200,000 in future medical expenses, he cannot obtain them because Progressive did not cause them—the accident did. Mr. Sanders's method of calculating his future damage claims stems entirely from his reading of Dr. Conger's April 20, 2020 prognosis, which Mr. Sanders interprets to require 2 visits per month for 39 years at roughly $200 per visit. At the time of Dr. Conger's April 20, 2020 report, Progressive had not received Mr. Sanders's claim. Therefore, even if the court assumes that Mr. Sanders's reading of Dr. Conger's April 20, 2020 opinion is correct and that Mr. Sanders is going to have over $200,000 in future chiropractic visits, the only basis for that amount is the November 2019 accident—not Progressive's alleged bad faith. Thus, Mr. Sanders cannot show that his past, present, or future medical care proves the element of the fact of damages because Progressive did not cause any of them as a matter of law.[102]

## CONCLUSION AND ORDER

As shown above, Progressive is entitled to summary judgment as to Mr. Sanders's second cause of action because his claim was fairly debatable. Additionally, if the Utah Supreme Court determines that attorney's fees are not a stand-alone category of damages for first-party insurance claims, then Mr. Sanders also failed establish the fact of damages. Accordingly, Mr. Sanders's motion[103] is DENIED, and Progressive's motion[104] is GRANTED.[105]

---

[102] Because the court finds that Mr. Sanders's claim of future damages is unattainable for want of causation, the court declines to address whether those damages would also be excluded under Fed. R. Civ. P. 37(c) for Mr. Sanders's failure to disclose them under Fed. R. Civ. P. 26(a), (e).

[103] ECF No. 40.

[104] ECF No. 43.

[105] The parties also mutually objected to certain parts of declarations that Mr. Sanders and Mr. Wallin submitted. ECF Nos. 50 at 4-11; 56 at 2-7; 57. Because the court does not rely on

IT IS SO ORDERED.

DATED this 23rd day of January 2023.

BY THE COURT:

JARED C. BENNETT
United States Magistrate Judge

---

statements from either declaration that the parties claim establishes a "sham fact" or even a disputed issue of material fact, the court overrules the mutual objections.